IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00810-MEH

LUKE IRVIN CHRISCO,

     Plaintiff,

v.

JOHN SCOLERI,
JOAN KOPRIVNIKAR,
LAURIE TAFOYA,
OWENS,
RICHARD F. RAEMISCH,
JOHN HICKENLOOPER,
LYNN EDWARD TRAVIS,
RICHARD CORDOVA,
KIMBERLY WEEKS,
DONALD GIBSON,
PILGRIM,
LISA M. TOEPP,
DENEED CRANDELL,
LINNEA TOBIAS,
C. ESTEEP,
STACI WHITEHEAD, and
L. LIPICH,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

All Defendants other than Governor John Hickenlooper, Kimberly Weeks, Donald Gibson, and Staci Whitehead seek to dismiss Plaintiff Luke Chrisco's Amended Complaint in part pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Mr. Chrisco's claims arise out of his interactions with Defendants during his incarceration at San Carlos Correctional Facility ("SCCF"). To the extent Mr. Chrisco's claims address Defendants in their official capacities for

monetary relief, they are barred by sovereign immunity. Defendants sued in their individual capacity are entitled to qualified immunity for ten of Mr. Chrisco's claims. Further, Claim Three fails to state a viable cause for action. However, at the motion to dismiss stage I cannot find that Claim Four is barred by the statute of limitations. Accordingly, I recommend that the District Court grant in part and deny in part Defendants' Motion to Dismiss.

## **BACKGROUND**

### I.    **Facts**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Mr. Chrisco in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

From July 2014 to April 2015, Mr. Chrisco consistently filed grievances against Colorado Department of Corrections ("CDOC") unit staff, supervisors, mental health staff, and the law library employees. Am. Compl. ¶ 1, ECF 17. As a result, he claims the staff retaliated against him, forced him to take psychoactive medication, and obstructed his access to the law library. *Id*. ¶¶ 1–5. According to Mr. Chrisco, Defendant Dr. Joan Koprivnikar instructed her staff to "keep track of every bad [thing] Chrisco does and if it comes down to it fib a little." *Id.* ¶ 4. These reports from her staff prompted Dr. Koprivnikar to eventually place Mr. Chrisco on long-term involuntary medication. *Id*. ¶ 5.

Mr. Chrisco first alleges Dr. Koprivnikar illegally forced him to take emergency medications after he engaged in a verbal altercation with another inmate in September 2014. *Id.* ¶ 2. He believes this was in retaliation for his litany of grievances. *Id*. Dr. Koprivnikar

continued the retaliation by force medicating Mr. Chrisco without investigating the underlying allegations. *Id.* ¶ 9. On April 15, 2015, CDOC unit staff reported he "put feces in his vent, made a slurry of feces and urine in his toilet, refused to give back cuffs and was banging his head." *Id.* ¶ 5. However, Mr. Chrisco explains that another inmate left the feces and the mess in his toilet resulted from prison staff cutting off his water supply. *Id.* ¶¶ 7–8

On May 11, 2015, the Involuntary Medication Hearing Committee met to determine Mr. Chrisco's mental state. *Id.* ¶ 13. At the hearing, Defendant Donald Gibson, a mental health professional, reported on Mr. Chrisco's considerable criminal history; his attempted attacks on other inmates and prison staff; and his previous civil commitments or hospitalizations in Colorado, Florida, and Illinois. *Id.* ¶ 21. Defendant Dr. Pilgrim, a psychiatrist at the prison, stated Mr. Chrisco once declared he would "end up stabbing somebody if people [kept] making fun of [him]." *Id.* ¶ 23. Defendant Kimberly Weeks reported Mr. Chrisco previously had an altercation with another inmate and refused to stop fighting even after being sprayed with mace. *Id.* ¶ 26.

Additionally, Dr. Koprivnikar's report insinuated Mr. Chrisco's insanity and warned he may be a danger to himself and his surroundings. *Id.* Mr. Chrisco believes Dr. Koprivnikar also retaliated against him due to his unusual religious beliefs. *Id.* ¶ 31. He is the founder of Alchemical Christianity, a sexuality based religion devoted to "Kabbalistic Ritual Invocations and sexually prostrat[ing] himself in energetic connection to his divine God the Universal Architect." Id. ¶¶ 129–30. After discovering Mr. Chrisco's "Holy Creed of the Church of Alchemical Christianity," Dr. Koprivnikar reported his religion as psychotic and delusional thinking. *Id.* ¶ 29. Further, she described his religious beliefs as "manifestation[s] of 'Schizoaffective disorder.'" *Id.* ¶ 30.

The Hearing Committee decided to administer over thirty psychoactive medications for

180 days. *Id.* ¶ 58. These orders continued from May 2015 to March 2017. *Id.* ¶ 84. Although he admits to cheating his medication most of the time, Mr. Chrisco received three muscular injections of Halidol and a few doses of Zyprexa. *Id.* ¶ 85. He claims he has an increased risk of diabetes and liver disease, reduced sex drive, sciatica-like nerve pain, anxiety, permanent brain damage, weight problems, and depression due to the involuntary medication. *Id.* ¶¶ 86–87.

## II.    Procedural History

Based on these factual allegations, Mr. Chrisco filed his Amended Complaint on August 28, 2017. Am. Comp., ECF No. 17. Mr. Chrisco brings nineteen claims for relief. *Id.* Only twelve of these claims are relevant to my present analysis, each of which relates to his involuntary medication. Claim Sixteen asserts Defendant Richard Raemisch violated his First and Fourteenth Amendment rights. *Id.* ¶¶ 117–22. Claims Fourteen and Fifteen allege infringements on his Fourth and Fifth Amendment rights. *Id.* ¶¶ 106–15. Claims Two and Eleven assert behavior Mr. Chrisco alleges constituted cruel and unusual punishment. *Id.* ¶¶ 15, 84–87. Claims Eight, Twelve, Thirteen, Fifteen, and Seventeen assert equal protection violations. *Id.* ¶¶ 40–42, 89–104, 115, 124–31. Claim Seven addresses an infringement of the Establishment Clause. *Id.* ¶¶ 36–38. Claim Three asserts Dr. Koprivnikar violated his Ninth Amendment right to privacy. *Id.* ¶ 17. Lastly, Claim Four alleges an infringement of his Fourteenth Amendment due process right. *Id.* ¶ 23.

Defendants responded to the Amended Complaint by filing the present Motion to Dismiss in Part. Defs.' Mot., ECF No. 50. As to Mr. Chrisco's claims for monetary relief against Defendants in their official capacities, they assert entitlement to sovereign immunity. *Id.* at 9. Defendants claim they are entitled to qualified immunity to ten of Mr. Chrisco's claims. *Id.* at 9–25. They contend Claim Three is an improper Ninth Amendment claim. Additionally, Dr.

Pilgrim argues the claim against her is barred by the applicable statute of limitations.[1] *Id*. at 13. Mr. Chrisco responded to Defendants' motion on March 19, 2018. Pl.'s Resp., ECF No. 82. Defendants filed their reply on April 2, 2018. Defs.' Reply, ECF No. 85

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Mr. Chrisco in this case bears the burden of establishing that I have the jurisdiction to hear his claims.

---

[1] Although Claim Four also addresses actions by Ms. Weeks, she has not been served and is not represented by counsel in this Motion.

## II.        Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.   Twombly* requires a two prong analysis.  First, I must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80.  Second, I must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).   "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

## III.       Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's pleadings "liberally" and hold the

pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean:

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

## ANALYSIS

Defendants' Motion to Dismiss requires me to determine whether they are immune from suit. Mr. Chrisco has failed to state claims for substantive due process violations, compelled speech, an unlawful "seizure" and/or imprisonment of his mind/spirit, Eighth and Ninth Amendment violations, equal protection violations, and Establishment Clause violations. However, the face of the Amended Complaint does not make clear that Claim Four is barred by the statute of limitations, and, therefore, I cannot recommend dismissing this claim at the pleading stage.

Additionally, Mr. Chrisco asserts many of his claims against Defendants in their individual capacities. Thus, I must determine whether Defendants are entitled to qualified immunity.

Qualified immunity protects a public official whose violation of a plaintiff's civil rights was not clearly established at the time of the official's actions. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). "When faced with a qualified immunity defense, the plaintiff must establish '(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Id.* at 1069 (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)). I find Defendants sued in their individual capacities are entitled to qualified immunity over Claims Two, Seven, Eight, Eleven, Twelve, Thirteen, Fourteen Fifteen, Fifteen, Sixteen, and Seventeen.

Defendants also assert they are entitled to sovereign immunity from any monetary relief Mr. Chrisco seeks against them in their official capacities. Defs.' Mot. 8. I do not construe the Amended Complaint to seek more than injunctive relief from Defendants in their official capacities. Am. Compl. 25–26, ECF No. 17. However, to the extent Mr. Chrisco may seek monetary relief, I dismiss these claims. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Because Mr. Chrisco clearly asserts claims against Defendants in their official capacity for injunctive relief, I will address the constitutionality of those claims.[2]

## I.     Claim Sixteen Fails to State a Cause of Action.

[2] Although Governor Hickenlooper has not entered an appearance in this case, Mr. Chrisco's claims against Mr. Raemisch are identical to those asserted against Governor Hickenlooper. Accordingly, I recommend the District Court exercise its discretion under 28 U.S.C §1915 (d)(2)(A)(ii) to analyze at any time whether claims should be dismissed for failure "to state a claim on which relief may be granted."

Claim Sixteen alleges Mr. Raemisch, in both his individual and official capacities, infringed on Mr. Chrisco's First and Fourteenth Amendment rights by implementing a policy that compelled him to falsely answer questions during his involuntary medication hearings. Am. Compl. ¶¶ 117–22, ECF No. 17. Mr. Raemisch argues the questioning did not constitute compelled speech, because it related to the health and safety of Mr. Chrisco, prison staff, and other inmates, rather than political or ideological issues. Defs.' Mot. 22–24, ECF No. 50. Mr. Chrisco proposes the prison created a "Catch-22" situation in which he is compelled to falsely admit to his mental illness or deny it and continue forced medication. Pl.'s Resp. ¶ 53, ECF No. 82. According to Mr. Raemisch, the three questions were directly related to the Involuntary Medication Hearing's purpose, and therefore did not result in a constitutional violation. Defs.' Reply 10, ECF No. 85. I agree and recommend the District Court find Mr. Chrisco has failed to allege compelled speech or substantive due process violations.

A. First Amendment Compelled Speech Violation

It is clearly established "the government may not compel the speech of private actors." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1283 (10th Cir. 2004); *Wooley v. Maynard*, 430 U.S. 705, 714–15 (1977); *W. Va. State Bd. Of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley*, 430 U.S. at 714. However, a prisoner's First Amendment liberties are inevitably restricted. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* (emphasis added); *see Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 119 (1977) (prohibiting formation of prisoners' labor unions); *see*

9

*also Bell v. Wolfish*, 441 U.S. 520, 520 (1979) (restricting inmates' receipt of hardback books). To evaluate prisoners' rights cases, I must inquire "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." *Turner v. Safley*, 482 U.S. 78, 87 (1987); *Washington v. Harper,* 494 U.S. 210, 224 (1990) ("[T]he standard of review [] adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights."). Although addressing every potential legitimate penological interest is not necessary, a prisoner-plaintiff is required to "recite[] facts that might well be unnecessary in other contexts" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Gee v. Pacheco,* 627 F.3d 1178, 1185 (10th Cir. 2010).

Here, during Mr. Chrisco's involuntary medication hearing, the committee asked him three questions regarding his mental health:

1. Do you believe you have a mental illness?

2. Do you believe the medications are helping you?

3. Will you keep taking the medications if the order is discontinued at the Hearing today? Am. Compl. ¶ 118. He alleges feeling compelled "to answer the questions untruthfully . . . in hopes of being let off the medications." *Id.* ¶ 120. Moreover, he claims these questions only "serve[d] as legal justification for the unjustified administration of the medications." *Id.* ¶ 119.

This claim is analogous to Mr. Chrisco's First Amendment claim in *Chrisco v. Raemisch,* No. 17–cv–01036–PAB–MEH, 2018 WL 949319, at *9–10 (D. Colo. Feb. 20, 2018). In that case, Mr. Chrisco alleged the extensive interviews SCCF requires of a prisoner on mental health watch compel one's consent to psychiatric treatment. *Id.* at *9. Mr. Chrisco's failure to assert the interviews were "not reasonably related to a legitimate penological interest" resulted in the

dismissal of this claim. *Id.* at *10. Comparable to *Chrisco v. Raemisch*, Mr. Chrisco again fails

to make any argument that the hearing questions are not reasonably related to a legitimate

penological interest. Without any allegation to the contrary, I find the questions directly relate to

maintaining the safety of prisoners. Thus, I conclude the CDOC's policy does not violate Mr.

Chrisco's constitutional rights and recommend finding that Mr. Raemisch is entitled to qualified

immunity over Mr. Chrisco's individual capacity claim, as there is no clearly established violation

of the First Amendment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

     <u>B.</u>    <u>Fourteenth Amendment Substantive Due Process Violation</u>

    Mr. Chrisco also appears to assert a Fourteenth Amendment violation arising out of the

questions prison officials asked him. Though Defendants do not explicitly respond to these

allegations, I may recommend dismissing claims at any time if I determine the allegation "fails to

state a claim on which relief may be granted." 28 U.S.C §1915 (d)(2)(A)(ii); *see also Curley v.*

*Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001) ("Dismissal of a pro se complaint for failure to state a

claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged

and it would be futile to give him an opportunity to amend."). Mr. Chrisco asserts the questions

asked during his hearing violated his substantive due process rights and would "shock the

conscience of a federal Judge." Am. Compl. ¶ 121. A substantive due process violation occurs

when government action either "infringes upon a fundamental right" or "shocks the conscience."

*See Seegmiller v. LaVerkin City*, 528 F.3d 762, 767–68 (10th Cir. 2008); *Washington v.*

*Glucksberg*, 521 U.S. 702, 721 (1997); *Chavez v. Martinez*, 538 U.S. 760, 787 (2003). Conduct

"shocks the conscience" if it is deliberate government action that is 'arbitrary' and 'unrestrained

by the established principles of private right and distributive justice.'" *Seegmiller,* 528 F.3d at

767. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "[O]nly the most

egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*; *see Hill v. Fountain*, No. 86–1815–C., 1989 WL 46211, at 3 (D. Kan. Apr. 10, 1989) (forcing the plaintiff down on his stomach and removing his shoes is not an abuse of power that shocks the conscience); *Rockette v. Ramirez*, No. 14–cv–02178–RBJ–MJW, 2015 WL 350804, at *3 (D. Colo. Jan. 27, 2015) (pulling a prisoner's hair and allegedly giving the prisoner whiplash does not shock the conscience). The questions proposed to Mr. Chrisco at his hearing are wholly related to his potential mental illness; thus, they are not so egregious as to be "conscious shocking."

## II. Mr. Chrisco Fails to State a Viable Claim for an Unlawful "Seizure" and/or Imprisonment of His "Mind/Body/Spirit."

In Claims Fourteen and Fifteen, Mr. Chrisco alleges Defendants' actions constituted a violation of his Fourth and Fifth Amendment rights. Am. Compl. ¶ 106–15, ECF No. 17. Specifically, Mr. Chrisco argues the involuntary medication orders resulted in an improper seizure of his "mind/soul/spirit" and false imprisonment of his mind without due process of law. *Id*. ¶ 107. I recommend finding Mr. Chrisco has failed to state Fourth and Fifth Amendment violations.

Regarding his due process claim, the Fifth Amendment applies to federal officials, whereas the Fourteenth Amendment applies to state and local officials. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States."). Construing these claims as asserting Fourteenth Amendment due process violations, they are identical to Claims Four and Nine.[3] Am. Compl. ¶¶ 19–26, 43–78. Thus, I recommend dismissing Mr. Chrisco's duplicative due process claim and will address his Fourth Amendment

---

[3] Defendants do not move to dismiss Claims Four and Nine on the merits.

arguments here.

Mr. Chrisco alleges violations of his Fourth Amendment rights against Mr. Raemisch and Governor Hickenlooper in their official capacity. Am. Compl. ¶¶ 110–12. In particular, he claims the CDOC's A.R. 700–23 policy addressing the treatment of persons with mental illnesses violates his right to be free of unreasonable seizures. *Id.* Overall, prisoners' Fourth Amendment rights are restricted. *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008); *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Furthermore, based on my extensive research, no court has found involuntary medication to violate a prisoner's Fourth Amendment rights. A violation of one's right to be free from involuntary medication is well supported under the Fourteenth Amendment; therefore, I find this claim is better analyzed under that framework. *See Washington v. Harper,* 494 U.S. 210, 227 (1990) ("The Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if he is dangerous to himself or others and the treatment is in his medical interest."); *Carter v. Koprivnikar*, No. 15–cv–00435–KLM, 2016 WL 950125, at *4 (D. Colo. Mar. 14, 2016) (finding A.R. 700-23 details the necessary procedural safeguards prior to involuntary medication of an inmate according to *Washington v. Harper*). Therefore, I recommend that the District Court refuse to recognize such a claim, particularly when an alternative and adequate remedy exists.

To the extent Mr. Chrisco asserts an individual capacity claim against Mr. Raemisch, Governor Hickenlooper, and Dr. Koprivnikar, there is no law clearly establishing this violation. As stated above, my research has failed to reveal any such case. Additionally, Mr. Chrisco fails to cite to a case holding that involuntary medication in the prison context violates the Fourth Amendment. Thus, I recommend finding that Defendants are entitled to qualified immunity for

Mr. Chrisco's individual capacity Fourth Amendment claim. *See Anglin v. City of Aspen, Colo.* 552 F. Supp. 2d 1205, 1224 (D. Colo. 2008) ("[I]t cannot be said that it was clearly established in 2004 that participation in forcible sedation could result in the violation of a detainee's Fourth Amendment rights.").

## III.     Mr. Chrisco Fails to State Viable Claims Under the Eighth Amendment.

Claims Two and Eleven assert Dr. Koprivnikar violated his Eighth Amendment rights when she administered his involuntary medications. Am. Compl. ¶¶ 15, 84, ECF No. 17. Defendants argue Mr. Chrisco has failed to demonstrate Dr. Koprivnikar acted with the purpose of harming him. Defs.' Mot. 11–13, ECF No. 50. Additionally, they contend Mr. Chrisco did not plead a violation of clearly established law.[4] *Id.* I agree with Defendants and recommend finding Dr. Koprivnikar is entitled to qualified immunity.

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when a prison official applies "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Additionally, "deliberate indifference to a prisoner's serious illness or injury" also constitutes a violation of the Eighth Amendment. *Id.* at 105. "The Supreme Court has not directly addressed whether involuntarily medicating an inmate could run afoul of the Eighth Amendment's Cruel and Unusual Punishment clause." *Martin v. Kazulkina*, No. 12–cv–14286, 2017 WL 971706, at *13 (E.D. Mich. Feb. 21, 2017). Therefore, I will apply the frameworks of both deliberate indifference and excessive force to Mr. Chrisco's claim.

The deliberate indifference standard requires two elements: (1) the deprivation alleged must be, objectively, "sufficiently serious"; and (2) the prison official must have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A medical need is

---

[4]     Mr. Chrisco did not respond to Defendants' Eighth Amendment argument.

sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1269, 1291 (10th Cir. 2006). In *Bomprezzi v. Kaprivnikar*, the plaintiff claimed his unnecessary treatment with antipsychotic medications caused him "a chemically-induced anxiety attack, suicidal thoughts, severe feelings of discouragement, no motivation . . . severe drowsiness, unexplained hunger, and a sensitivity to certain noises." No. 11–cv–03344–REB–MEH, 2012 WL 7763089, at *4, (D. Colo. Aug. 3, 2012), report and recommendation adopted, No. 11–cv–03344–REB–MEH, 2013 WL 1124820 (D. Colo. Mar. 18, 2013).[5] The plaintiff did not allege these medical needs were diagnosed by a doctor and they were not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (quoting *Sealock*, 218 F.3d at 1291). Therefore, the plaintiff failed to meet the objective element of a deliberate indifference Eighth Amendment claim. *Id.*

Here, Mr. Chrisco argues his "health was endangered on a longterm [sic] basis because of Dr. K's med regimen." Am. Compl. ¶ 86. He alleges the administration of involuntary medication caused a reduced sex drive, sciatica-like nerve pain, anxiety, permanent brain damage, weight gain, drowsiness, depression, and an increased risk of diabetes and liver disease. *Id*. Mr. Chrisco does not allege any of these side effects were diagnosed by a doctor, nor does he allege he required further treatment. *Id*. Similar to *Bomprezzi*, Mr. Chrisco's medical needs are not sufficiently serious to meet the objective element of a deliberate indifference claim. Additionally, even if they were sufficiently severe, he alleges no facts plausibly suggesting Dr. Koprivnikar was aware of and disregarded the risk of these side effects. I recommend finding that Mr. Chrisco has failed to allege a plausible deliberate indifference claim.

---

[5] Dr. Koprivnikar's name was misspelled in the cited opinion.

The excessive force standard is implicated "[w]hen prison officials maliciously and sadistically use force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The essential analysis is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Excessive force claims must allege two elements: (1) the harm was sufficiently severe to violate a constitutional right, and (2) the prison official had "a sufficiently culpable state of mind." *Id.* at 8, (quoting *Wilson,* 501 U.S. at 298). This standard "necessarily excludes from constitutional recognition *de minimis* uses of physical force." *Id.* at 10. Further, the plaintiff must specifically allege the defendant applied force "maliciously and sadistically for the very purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Here, Mr. Chrisco alleges Dr. Koprivnikar's order to force medicate him "was not 'treatment' but punishment of a cruel and unusual nature." Am. Compl. ¶ 84. Mr. Chrisco claims Dr. Koprivnikar acted "without justification and with the very intent of causing harm." *Id.* ¶ 15. However, these statements are conclusory and do not allege Dr. Koprivnikar acted "maliciously and sadistically." *Farmer*, 511 U.S. at 835. In *Mattox v. Werholtz*, the plaintiff argued his "'mental pain is sufficiently serious' and 'all defendants acted with a sufficiently culpable state of mind' and 'with deliberate indifference.'" No. 07–3320–SAC, 2008 WL 763124, at *1 (D. Kan. Mar. 21, 2008). This conclusory statement proved inadequate to establish his Eighth Amendment claim. *Id.* Similar to *Mattox*, Mr. Chrisco's factual allegations are insufficient and I recommend finding they fail to support a plausible excessive force claim.

Furthermore, Mr. Chrisco must meet his burden of showing a clearly established violation of his Eighth Amendment rights. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). Although inmates have "a right to be free from the arbitrary administration of

antipsychotic medication," their rights are "defined in the context of the inmate's confinement." *Washington v. Harper*, 494 U.S. 210, 221 (1990). The Supreme Court has not "addressed whether the Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits the involuntary medication of an inmate." *Hoyt v. Big Spring State Hosp.,* No. 6:15–CV–0003–BL, 2016 WL 7189844, at *13 (N.D. Tex. Dec. 8, 2016); *Martin*, 2017 WL 971706, at *13. Accordingly, I recommend that the District Court find Dr. Koprivnikar is entitled to qualified immunity over Mr. Chrisco's Eighth Amendment claim.

## IV. Mr. Chrisco Fails to State Viable Equal Protection Claims Upon Which Relief Can Be Granted.

In Claims Eight, Twelve, Thirteen, Fifteen, and Seventeen, Mr. Chrisco asserts Defendants infringed on his equal protection rights during the involuntary administration of anti-psychotic drugs. Am. Compl. ¶¶ 40–42, 89–104, 115, 124–31, ECF No. 17. He alleges equal protection violations in four instances. *Id*. First, Mr. Chrisco claims pretrial detainees are subjected to involuntary medication only after judicial hearings with rights to counsel, discovery, and witnesses, whereas convicted felons are not afforded the same rights. *Id*. ¶¶ 89–99. In connection to this claim, he alleges mentally ill pretrial detainees are allowed to refuse medical treatment, yet convicted mentally ill persons are not provided this option. *Id*. ¶ 104. Second, he claims inmates without mental illnesses are afforded the right to refuse medical treatment, in direct contrast to inmates diagnosed with mental illnesses. *Id*. ¶¶ 101–03. Third, Mr. Chrisco alleges other religions are not subjected to the same "disparate treatment" as Alchemical Christianity. *Id*. ¶¶ 40–42. Fourth, Claim Fifteen asserts a general infringement on his equal protection rights occurred when he lost the right to refuse medical care and a judicial hearing. Id. ¶ 115. Defendants argue Mr. Chrisco's "allegations fail to establish that he is being treated differently

than individuals who are similarly situated to him." Defs.' Mot. 18, ECF No. 50. Mr. Chrisco's response alleges multiple similar characteristics between the listed groups and himself, including a shared "interest to be able to access the courts without being subjected to the crippling and mind/will altering effects of psychoactive drug regimens." Pl. Resp. ¶ 18, ECF No. 82. However, Defendants contend these few similarities do not establish a class of individuals truly "similarly situated in all material respects," and thus he has failed to state a valid claim. Defs.' Reply 3, ECF No. 85.

The Fourteenth Amendment requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. This Amendment is "essentially a direction that all persons similarly situated should be treated alike." *Plyer v. Doe*, 457 U.S. 202, 216 (1982). To evaluate an equal protection violation, "[f]irst, we ask whether the challenged state action intentionally discriminates between groups of persons." *SECYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). After intentional discrimination against "similarly situated persons" is established, "courts ask whether the state's intentional decision to discriminate can be justified by reference to some upright government purpose." *Id*. at 686.

Notably, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). In prisons, an equal protection violation occurs when the government treats an inmate differently than another who is "similarly situated" and "the difference in treatment was not 'reasonably related to legitimate penological interests.'" *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Further, claims that do not implicate a fundamental right or protected class are subject to "rational-basis" review and "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for

the classification." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320–21 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

A.    Discrimination Against Convicted Persons

Claim Twelve asserts an equal protection violation occurred when the prison medicated him without right to counsel, discovery, evidentiary and examination rules, and witnesses.   Am. Compl. ¶¶ 89–98.   Further, he claims testifying officials and prison staff are not required to be under penalty of perjury during these administrative hearings.   *Id*. ¶ 98.   According to Mr. Chrisco, pretrial detainees are afforded these rights.   *Id*.   In Claim Thirteen, Mr. Chrisco also alleges mentally ill pretrial detainees are given more rights than mentally ill convicted persons.   *Id*. ¶ 104.   Thus, Mr. Chrisco defines the discriminated group as "convicted persons" in comparison to pretrial detainees.   *Id*. ¶ 91.

I hold convicted prisoners are not similarly situated to pretrial detainees for equal protection purposes.   It is evident prisoners convicted of a crime have different constitutional rights than pretrial detainees.   *See Porro v. Barnes*, 624 F.3d 1322, 1325–26 (10th Cir. 2010) (differentiating excessive force standards during various stages in the criminal justice system). Specifically, in regard to equal protection claims, courts have found that pretrial detainees are not similarly situated to convicted inmates.   *See, e.g.*, *McBride v. Bremer*, 990 F.2d 1253, *2 (5th Cir. 1993) ("Nothing indicates that the inmates at the county jail were . . . similarly situated to inmates in the state prison."); *Toro v. Pugh*, No. 4:12CV2462, 2013WL 3057022, at *3 (N.D. Ohio, June 17, 2013) ("As a convicted prisoner, [plaintiff] is not entitled to the same rights and privileges as a pretrial detainee.   Therefore, because convicted prisoners are not "similarly situated" to pretrial detainees, [plaintiff] cannot advance an equal protection claim based on disparate treatment."). Since Mr. Chrisco cannot establish intentional discrimination against "similarly situated persons,"

I recommend finding he has failed to allege an equal protection violation. Moreover, I recommend finding Mr. Raemisch and Governor Hickenlooper are entitled to qualified immunity over the individual capacity claim, since the conduct does not violate clearly established law.

        B.      Discrimination Against Mentally Ill Prisoners

Claim Thirteen alleges an equal protection violation against the "mentally ill or allegedly mentally ill" in comparison to prisoners in CDOC who are not mentally ill. Am. Compl. ¶ 101. He asserts the CDOC policy revoked his right to refuse medication as a mentally ill person, whereas those not considered mentally ill retain this right. *Id.* Even assuming mentally ill individuals are similarly situated to non-mentally ill persons, I recommend finding Mr. Chrisco fails to state a cause of action.

Claims related to mentally ill persons are subject to rational basis review, because they are not part of a protected class. *Heller*, 509 U.S. at 318–19; *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (applying rational-basis review to the class of "disabled persons"); *Chrisco v. Raemisch*, No. 17–cv–01036–PAB–MEH, 2018WL94319, (D. Colo. Feb. 20, 2018) (holding Mr. Chrisco's class of mentally ill or allegedly mentally ill persons was a "vaguely-described category of individuals [] not entitled to heightened protection"). Thus, in prisons, mentally ill persons may be treated differently as long as the treatment is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Under rational basis review, "a classification . . . is accorded a strong presumption of validity." *Heller*, 509 U.S. at 319. Although Defendants do not assert a legitimate penological interest, I "must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court. This determination is a legal question which need not be based on any evidence or empirical data." *Teigen v.*

*Renfrow*, 511 F.3d 1072, 1084 (10th Cir. 2007).

I recommend finding that the involuntary medication policy furthers the legitimate penological interest in maintaining prison safety. *See Washington v. Harper*, 494 U.S. 210, 221 (1990) (holding involuntary medication "is reasonably related to the State's legitimate interest in combating the danger posed by a violent, mentally ill inmate"); *see also Carter v. Koprivnikar*, No. 15–cv–00435–KLM, 2016 WL 950125, at *4 (D. Colo. Mar. 14, 2016) (finding A.R. 700-23 details the necessary procedural safeguards prior to involuntary medication of an inmate according to *Washington v. Harper*).[6] Thus, Mr. Chrisco cannot claim an equal protection violation, as he fails to allege the classification is not reasonably related to a legitimate penological interest.

C.     Discrimination Against Alchemical Christianity

Claims Eight and Seventeen allege prison staff subjected Mr. Chrisco "to the disparate treatment of being force medicated when other prisoners were not force medicated for their protected religious beliefs." Am. Compl. ¶ 130. He appears to assert an equal protection claim on a "class of one" theory in his Amended Complaint. *Id.* However, in his response, Mr. Chrisco claims his religion, Alchemical Christianity, is not a "Religion of One" and proceeds under the general equal protection analysis. Pl.'s Resp. ¶ 58. Since Mr. Chrisco is a pro se plaintiff, I will interpret his claims liberally and analyze them under the more lenient, general equal protection standard. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Defendants argue Mr. Chrisco has "not established that he has been treated differently than similarly situated individuals." Defs.' Mot. 20. I agree with Defendants and recommend

---

[6] Although these cases address the due process implications of involuntary medication, the substantive analyses of equal protection and due process violations converge. *See Powers v. Harris,* 379 F.3d 1208, 1215 (10th Cir. 2004) ("[A] substantive due process analysis proceeds along the same lines as an equal protection analysis.").

finding they are entitled to qualified immunity.

Mr. Chrisco "must show that Defendants treated similarly situated groups differently . . . and that the differential treatment was motivated by impermissible consideration of religion." *Handy v. Cummings*, No. 11–cv–00581–WYD–KMT, 2013 WL 1222415, at *21 (D. Colo. Mar. 25, 2013) (affirming summary judgment on an equal protection claim due to the plaintiff's failure to identify other inmates similarly situated to him that defendants treated differently); *Caruso v. Zenon*, No. 95–MK–1578 (BNB), 2005 WL 5957978, at *11 (D. Colo. 2005). Conclusory statements with no factual support do not suffice to state a cause of action. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, identical to *Handy*, Mr. Chrisco fails to specify differential treatment among similarly situated inmates, and he fails to allege Defendants' actions were directly correlated to his religion. First, Mr. Chrisco has not identified any other religions, let alone religions that are similarly situated to his. The only possible common practice Mr. Chrisco purports to be similarly situated is a devotion to "the 'Slyphs [magical clouds] fighting or stopping the Chemtrails . . . which parallel shamanic weather-beliefs of indiginous [sic] peoples." *Id*. ¶ 59. Yet, he later admits his "odd" religion does not "contain any reference" to this devotion. *Id*. ¶ 61. I recommend finding this is insufficient to establish the similarly situated requirement.

Relevant case law demonstrates the extent of similarities required to be considered "similarly situated." In *Caruso*, the court held a Muslim inmate similarly situated to Jewish inmates because both groups sought specialized meals as part of their religious beliefs. 2005 WL 5957978, at *15. The two religions required "that meat be slaughtered under certain specific conditions, and that contamination by improper foodstuffs be prevented." *Id*. Although the two

religions are not identical, the court found them "similarly situated with regard to the provision of kosher meals." *Id.* In contrast, in *McBride v. Shawnee, Kansas County Services*, two religions were not considered similarly situated solely due to the different types of drugs they took and the frequency of their use in religious ceremonies. 71 F. Supp. 2d 1098, 1101–03 (D. Kan. 1999). Because Mr. Chrisco does not allege his religion shares similar practices with others, and the standard set in *McBride* requires specific similarities, I recommend finding he has failed to state a violation of his equal protection rights.

Second, the mere assertion that Defendants knew of Mr. Chrisco's religion is insufficient to allege that Defendants intentionally treated Mr. Chrisco differently because of his religion. *See generally McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (stating that discriminatory intent "implies that the decisionmaker [sic] . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,'" the individual's religion). Thus, I recommend finding Mr. Chrisco has failed to state an infringement on his constitutional rights and has not presented a violation of clearly established law.

### D.    Failure to State a Claim

Claim Fifteen alleges mere equal protection violations due to the loss of his right to refuse medical treatment and a judicial hearing. Am. Compl. ¶ 115. However, a valid equal protection claim must assert a "similarly situated" group. *Fogle*, 435 F.3d at 1261; *see Ashcroft,* 556 U.S. at 678. Therefore, I recommend dismissing this part of Claim Fifteen.

## V.    Mr. Chrisco Fails to State a Viable Establishment Clause Claim.

Claim Seven asserts Defendants Dr. Koprivnikar, Ms. Lisa Toepp, Ms. Deneen Crandell, and Ms. Linnea Tobias force medicated him due to his religious beliefs, thereby violating the Establishment Clause of the First Amendment. Am. Compl. ¶ 36, ECF No. 17. Further, he

claims Defendants promoted a "'religion' of state sponsored medication based therapy psychiatry and Traditional Protestant/Catholic Christianity." *Id.* ¶ 37. Defendants contend they are entitled to qualified immunity because Mr. Chrisco has failed to demonstrate their actions violated clearly established law. Defs.' Mot. 15, ECF No. 50. I agree with Defendants, and recommend finding Mr. Chrisco has failed to allege an Establishment Clause claim.

When construed liberally, I find Mr. Chrisco's claim attempts to plead violations of both the Establishment Clause and Free Exercise Clause. Am. Compl. ¶¶ 36–38. However, to the extent Mr. Chrisco alleges Defendants infringed on his rights to practice Alchemical Chemistry, this claim is identical to Claim Six. Am. Compl. ¶ 33. Thus, I recommend dismissing Mr. Chrisco's Free Exercise claim as duplicative, and I address Mr. Chrisco's Establishment Clause violations here.

"[T]he Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). Governmental action does not offend the Establishment Clause if it: (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1259 (10th Cir. 2005). Justice O'Connor refined this analysis to evaluate whether the action has the purpose, or effect of conveying "a message of endorsement or disapproval." *Lynch*, 465 U.S. at 687–94 (O'Connor, J., concurring). The Tenth Circuit has instructed courts to "apply both the purpose and effect components of the refined endorsement test, together with the entanglement criterion imposed by *Lemon*." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d

542, 552 (10th Cir. 1997); *Natural Arch and Bridge Soc'y v. Alston*, 209 F. Supp. 2d 1207, 1222 (D. Utah 2002). "To survive a motion to dismiss [a plaintiff] must allege facts which, accepted as true, suggest a violation of any part of the analysis." *Bauchman for Bauchman*, 132 F.3d at 552–53.

In *Vazirabadi v. Boasberg*, the plaintiff alleged the "[d]efendants' conduct in identifying and classifying job applicants from Muslim[ ] Middle East and African countries for extreme vetting clearly shows, under color of law, the depth of animus against this class of people." No. 17–cv–01194–WJM–MEH, 2017 WL 4516973, at *10 (D. Colo. Oct. 10, 2017). This allegation, when accepted as true, did not suggest a violation of the Establishment Clause due to the conclusory nature and lack of foundation. *Id*.

Similarly, Mr. Chrisco alleges no facts expressly indicating that the purpose or effect of the force medication policy is to endorse or disapprove of religion. In fact, Mr. Chrisco's only allegation in support of his claim is that the force medication "order comprised a governmental preference . . . ." Am. Compl. ¶ 37. I "will not infer an impermissible purpose or effect in the absence of any supporting factual allegations." *Bauchman for Bauchman*, 132 F.3d at 553; *see Lynch*, 465 U.S. at 680. Therefore, similar to *Vazirabadi*, Mr. Chrisco's allegation is conclusory and I recommend finding he fails to state a valid claim. Furthermore, Mr. Chrisco cites to no law clearly establishing a First Amendment violation in this context. Thus, I recommend finding Defendants are entitled to qualified immunity.

## VI.   Mr. Chrisco's Claim under the Ninth Amendment Fails to State a Viable Claim for Relief.

Claim Three asserts Dr. Koprivnikar violated his Ninth Amendment right to privacy by administering involuntary medication. Am. Compl. ¶ 17, ECF No. 17. Dr. Koprivnikar argues

Mr. Chrisco fails to allege a Ninth Amendment claim. Defs.' Mot. 10, ECF No. 50. Mr. Chrisco does not address Defendants' Ninth Amendment argument.

The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. However, "it is well established that the Ninth Amendment is not an independent source of individual rights, but a rule of construction to be applied in certain cases." *Lomax v. Lander*, No. 13–cv–0707–WJM–KMT, 2014 WL 1584219, at *6 (D. Colo. Apr. 21, 2014); *see Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) ("[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."). Further, applying the Ninth Amendment to a Section 1983 claim for the mistreatment of prisoners would be "indisputably meritless," since the Eighth Amendment already addresses prisoner rights. *Parnisi v. Colo. State Hosp.*, 922 F.2d 1223, *1 (10th Cir. 1993) (unpublished table decision); *Florence v. H.A. Rios*, No. 07–cv–00380, 2008 WL 538677, at *8 (D. Colo. Feb. 25, 2008); *see McIlrath v. City of Kingman*, No. 12–1002–JAR–KMH, 2012 WL 4359074, at *5 (D. Kan. Sept. 24, 2012) ("The Ninth Amendment is a rule of construction, not an independent source of constitutional rights, so it cannot form the basis of a civil rights claim under §1983."). Therefore, I recommend dismissing Claim Three.

## VII. Mr. Chrisco's Claim Against Dr. Pilgrim Is Not Presently Barred by the Statute of Limitations.

Claim Four alleges Dr. Pilgrim (along with five other defendants) authored false reports that eventually led to an involuntary medication regimen and the denial of his Due Process rights. Am. Compl. ¶ 23, ECF No. 17. In the Motion to Dismiss, Defendants argue this claim is barred by the two-year statute of limitations. Defs.' Mot. 13, ECF No. 50. Because the applicability of

the statute of limitations defense is not apparent on the face of the Amended Complaint, I disagree with Defendants.

Civil rights claims under 42 U.S.C. § 1983 are subject to a two-year statute of limitations. Colo. Rev. Stat. § 13–80–102(g). The date of accrual is "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993); *Hunt v. Bennet*, 17 F.3d 1263, 1266 (10th Cir. 2004) (quoting *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)). The plaintiff's injury is the constitutional violation of his or her rights. *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998). If the answer to when the plaintiff knew a constitutional violation occurred is "apparent on the face of the complaint, this issue may be resolved on a motion to dismiss." *Dummar v. Lummis*, 543 F.3d 614, 619 (2008).

Here, Mr. Chrisco asserts Dr. Pilgrim authored false reports about his behavior and mental state. Am. Compl. ¶ 23. However, the Amended Complaint does not make clear when he was aware this constitutional violation occurred. Although he alleges "Dr. Pilgrim authored a false report on 05/27/14," he does not admit to actually discovering the violation on that day.[7] *Id.* Consequently, based only on the allegations in the Amended Complaint, I cannot conclusively determine that Mr. Chrisco had knowledge of the false report outside of the limitations period. Accordingly, because the date of Mr. Chrisco's knowledge of the violation is not apparent on the face of the complaint, I recommend finding Defendants are not entitled to dismissal of this claim

---

[7] Mr. Chrisco suggests in his response brief that he had notice of Dr. Pilgrim's report before it was used at the hearing. However, at the motion to dismiss stage, I must analyze only whether the statute of limitations defense is apparent on the face of the Complaint. *See Dummar v. Lummis*, 543 F.3d 614, 619 (2008). Thus, in ruling on Defendants' statute of limitations defense, I do not consider the factual assertions in Mr. Chrisco's response.

based on the statute of limitations.[8]

**CONCLUSION**

Ultimately, I find Mr. Chrisco has failed to state constitutional violations and Defendants are entitled to qualified immunity over ten of his claims. Additionally, Claim Three fails to state a viable claim. To the extent Mr. Chrisco asserts claims against Defendants Raemisch and Hickenlooper in their official capacities; I dismiss these causes of action for failure to state a claim. Claim Four is not presently barred by the statute of limitations, as the date Mr. Chrisco knew of the constitutional violation is not apparent on the face of the complaint. Accordingly, I respectfully recommend that Defendants' Motion to Dismiss Amended Complaint in Part pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [filed December 22, 2017; ECF No. 50] be **granted in part and denied in part** and that Defendants Raemisch, Estep, and Hickenlooper be dismissed from this case.[9] If the District Court were to accept this Recommendation, Mr. Chrisco's remaining claims would be:

- Claim One against Dr. Koprivnikar;

- Claim Four against Dr. Koprivnikar, Ms. Travis, Mr. Cordova, Mr. Gibson, Ms. Weeks, and

---

[8] If Defendants conclusively demonstrate Mr. Chrisco had knowledge of the alleged violation outside of the limitations period after discovery, they may be entitled to summary judgment based on their statute of limitations defense.

[9] **Error! Main Document Only.**Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Dr. Pilgrim;

- Claim Five against Dr. Koprivnikar;

- Claim Six against Dr. Koprivnikar, Ms. Toepp, Ms. Crandell, and Ms. Tobias;

- Claim Nine against Mr. Scoleri, Ms. Tafoya, and Mr. Owens;

- Claim Ten against Dr. Koprivnikar;

- Claim Eighteen against Mr. Scoleri, Mr. Whitehead, and Ms. Lipich; and

- Claim Nineteen against Ms. Toepp.

        Respectfully submitted at Denver, Colorado, this 19th day of March, 20199.

                                BY THE COURT:

                                *Michael E. Hegarty*

                                Michael E. Hegarty
                                United States Magistrate Judge