IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:17-cv-00810-RM-MEH

LUKE IRVIN CHRISCO,

 Plaintiff,

v.

JOHN SCOLERI,
JOAN KOPRIVNIKAR,
LAURIE TAFOYA,
SIOBHAN BURTLOW,
OWENS,
LYNN EDWARD TRAVIS,
RICHARD CORDOVA,
KIMBERLY WEEKS,
DONALD GIBSON,
PILGRIM,
LISA M. TOEPP,
DENEEN CRANDELL,
LINNEA TOBIAS,
STACI WHITEHEAD, and
L. LIPICH,

 Defendants.

---

## ORDER
---

This matter is before the Court on the November 19, 2019, recommendation of Magistrate Judge Michael E. Hegarty (ECF No. 159) to grant Defendants' motion for summary judgment (ECF No. 120). Plaintiff has filed two motions to vacate the recommendation (ECF Nos. 162, 163) and an objection to the recommendation (ECF No. 167). For the reasons below, the Court overrules Plaintiff's objection, accepts and adopts the recommendation, grants

Defendants' motion for summary judgment, and denies Plaintiff's motions to vacate. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I. LEGAL STANDARDS

Plaintiff proceeds pro se; thus, the Court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court does not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted).

## II. BACKGROUND

Plaintiff is a former inmate of the Colorado Department of Corrections ("CDOC") who was released to parole in February 2019. He alleges generally that Defendants, all prison officials, violated his First Amendment rights by retaliating against him for his legal work and religious practices and by impeding his ability to exercise his religion. He also alleges that Defendants violated his due process rights in connection with the involuntary medication orders under which he was placed. The factual basis of these claims is set forth in the magistrate judge's findings of fact (ECF No. 159 at 3-12), and the Court will not reiterate it here; rather, the

3

Court addresses the disputed issues below in the context of addressing Plaintiff's specific objections.

In his amended complaint (ECF No. 17), Plaintiff asserted nineteen claims for relief against various Defendants for violations of his rights while he was in custody. The Court dismissed eleven of those claims. (ECF No. 135.) Defendants have moved for summary judgment on the grounds that Plaintiff's requests for injunctive and declaratory relief are moot as a result of his release from CDOC custody and that his claims for money damages against the individual Defendants are barred because Defendants are entitled to qualified immunity. (ECF No. 120.) Defendants' motion was referred to the magistrate judge. (ECF No. 128.) Once it was fully briefed (ECF Nos. 136, 152), the magistrate judge determined that Plaintiff had failed to raise a genuine issue of material fact as to any of his remaining claims and that Defendants were entitled to qualified immunity.

## III. MOTION FOR SUMMARY JUDGMENT

The Court finds that the magistrate judge's analysis was thorough and sound and discerns no clear error with respect to the determinations Plaintiff did not object to, including the determination that Plaintiff's claim for injunctive and declaratory relief are now moot. The Court now turns to the specific objections raised by Plaintiff.

### A. Objections Regarding Claims One, Ten, and Nineteen

Plaintiff's Claims One, Ten, and Nineteen are based on the legal theory that Defendants Koprivnikar and Toepp retaliated against him for his legal work by taking steps that led to his being involuntarily medicated. Plaintiff argues that the magistrate judge erred by finding that he failed to make a showing of animus with respect to Defendant Koprivnikar, a doctor who, in July

4

2014, assessed Plaintiff with "appear[ing] to have at least a delusional disorder, if not a thought disorder." (ECF No. 120-10.) The report by Defendant Koprivnikar further states that Plaintiff "said he's drafted a letter to his attorney, that it will get to me." (*Id.*) A report by Defendant Koprivnikar from the following month states that Plaintiff had given her a letter stating his reasons for refusing to speak with her and describes him as "very litigious, appears delusional." (ECF No. 120-11.) Contrary to Plaintiff's speculative and conclusory arguments, however, these statements do not show that Defendant Koprivnikar's assessments were motivated by retaliatory animus because of Plaintiff's legal work. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (stating that a retaliation claim requires the plaintiff to show "that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct"). Plaintiff cites no other conduct by Defendant Koprivnikar that he alleges was retaliatory, nor does he identify any conduct by Defendant Toepp alleged to be retaliatory. And Plaintiff has not identified any erroneous factual findings by the magistrate judge that underly his retaliation claims. Accordingly, the Court concludes Plaintiff has failed to raise a genuine issue of material fact with regard to whether any conduct by these Defendants was substantially motivated by his legal work.

Plaintiff next argues that the magistrate judge relied on "flawed points" in concluding that Defendants' conduct was not sufficiently chilling to support a retaliation claim. (ECF No. 167 at 6.) *See Shero*, 510 F.3d at 1203 (stating that a retaliation claim requires the plaintiff to show "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"). However, there is no dispute that Plaintiff continued to engage in protected activity, such as filing grievances, despite

5

the conduct that forms the basis for these claims. Moreover, Plaintiff fails to identify specific facts to support his contention that he suffered an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity. *See Jurasek v. Utah State Hosp.*, 158 F.3d 506, 511 (10th Cir. 1998) (noting that "treatment with psychotropic drugs is not punishment").

To the extent that Plaintiff argues these Defendants played a role in the determination that he was a danger to himself and others, again, he has not identified in his objections specific conduct by these Defendants to support his claims. Moreover, as discussed below, there is no genuine issue to as to the existence of an adequate basis for concluding that Plaintiff was a danger to himself and others.

### B. Objections Regarding Claim Six

Plaintiff's Claim Six is based on the legal theory that Defendants Koprivnikar, Toepp, Crandell, and Tobias impermissibly interfered with his ability to exercise his religious beliefs by seeking and obtaining orders directing his involuntary medication. Inmates have a right to a reasonable opportunity to pursue their religion. *See Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999). Nonetheless, a prison regulation or policy that impinges on that right "is valid if it is reasonably related to legitimate penological interests." *Id.* (quotation omitted). Essentially, Plaintiff alleges that his involuntary medication substantially burdened his sincerely-held religious beliefs. In his objections, he further argues that his involuntary medication was not reasonably related to legitimate penological interests because he was not a danger to himself or others.

Plaintiff concedes that he repeatedly flooded his cell, covered his window on two occasions—which required prison officials to extract him from his cell by force, got involved in a standoff with another inmate in 2014, and cracked his metal sink by banging it with a rubber tray. (ECF No. 167 at 7.) Yet Plaintiff contends that these were simply "misguided, but well-intentioned protest behaviors" and that had he "intended to harm himself or others he could have easily found or created opportunity to do so given his demonstrated intelligence, cleverness and perseverance in the face of adversity or challenge." (ECF No. 167 at 8.) Plaintiff also contends that "he never actually attempted to assault" another prisoner in 2014 and that he "merely made a showing of force." (*Id.*) However, Plaintiff's explanations of his conduct are insufficient to raise a genuine issue as to whether prison officials acted unreasonably by concluding that he posed a danger to himself and others.

Plaintiff also contends that he never threw food trays at prison staff, despite a report from a prison nurse stating that he had done so, and therefore the magistrate judge erred by considering that such conduct supported the determination that he posed a danger to others.[1] Plaintiff contends that all he did was "toss[] a few individual cheerios repeatedly at or near a guard's foot." (*Id.*) But based on the other evidence in the record, the Court finds that this distinction is immaterial. Regardless of whether prison officials relied on such conduct in concluding that Plaintiff was a threat to others, there is ample unrebutted conduct to support a determination that Plaintiff posed a danger to himself and others. For example, Plaintiff's CDOC record reflects that he attempted to assault another offender, twice needed to be extracted

---

[1] Plaintiff's second motion to vacate the magistrate judge's recommendation (ECF No. 163) raises this same issue but adds nothing substantive to the arguments in his objection.

from his cell by force, cracked a sink by repeatedly banging it with a food tray, and refused to respond to commands. Plaintiff various qualifications, explanations, and excuses related to these incidents are insufficient to raise a genuine issue with respect to the determination that he posed a danger to himself and others.

Plaintiff's contention that alternatives to involuntary medication were available is also unavailing. Although the availability of easy-to-implement alternatives is a factor for court to consider in determining whether a policy is rationally related to a legitimate interest, prison officials are not required to employ methods of an inmate's choosing. *See Hammons v. Saffle*, 348 F.3d 1250, 1255 (10th Cir. 2003) (citing *Turner v. Safley*, 482 U.S. 78, 90 (1987)). Where, as here, a prisoner is still able to exercise his religion, courts are particularly deferential to the policy judgment of corrections officials. *See id.*

Plaintiff contends that the magistrate judge erred by concluding that the involuntary medication orders did not substantially burden his ability to follow his religious practices. But the only burden Plaintiff identifies is that the medications inhibited his libido. "[A]n alternative means [of exercising one's religion] exists so long as *some* means, albeit not plaintiff's preferred means, of religious exercise is available." *Id.* at 1256. There is no evidence that Plaintiff's involuntary medication completely prevented him from practicing his religious rituals.

Plaintiff argues that, construing the facts in the light most favorable to him, he was not a danger to himself or others, and therefore Defendants were not justified in medicating him involuntarily. But Plaintiff's assessment of the risk he posed does not raise a genuine issue as to whether prison officials reasonably believed he posed such a threat. Plaintiff's admitted conduct alone could support a determination that he posed a danger to himself and others. Moreover,

Plaintiff cites no authority, nor is the Court aware of any, for the proposition that in making such a determination, Defendants were required to view Plaintiff's record in the light most favorable to him.

Plaintiff also argues that there is evidence rebutting Defendants' contention that his behavior improved during the time he was being subject to the involuntary medication orders. To the extent Plaintiff alleges that he was able to deceive prison officials and avoid taking his medications and that he merely pretended that his condition improved in the hope that he would not be required to continue taking them, the Court finds these arguments fail to raise a genuine issue as to whether the involuntary medication orders served a legitimate penological purpose.

### C. Objections Regarding Claim Five

Plaintiff contends that there are genuine issues of material fact with respect to his claim that Defendant Koprivnikar retaliated against him for exercising his religious beliefs. But Plaintiff identifies no specific evidence to support his argument and appears to rely on arguments that have been rejected above. The allegation that Defendant Koprivnikar characterized Plaintiff's beliefs as bizarre delusions and evidence of delusional thinking is insufficient to raise a genuine issue that her diagnoses were motivated by a desire to retaliate against him.

### D. Objections Regarding Claims Four, Nine, and Eighteen

In Claims Four, Nine, and Eighteen, Plaintiff asserts that the procedures preceding his involuntary medication orders violated his rights to due process. Plaintiff does not make any specific objections with respect to these claims, and therefore any such arguments are waived. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) ("[T]he failure to make timely

objection [to the findings and recommendations of the magistrate judge] waives appellate review of both factual and legal questions." (quotation omitted)).

Further, to the extent Plaintiff asserts that his objection is "incomplete" (ECF No. 167 at 1), the Court notes that he was granted two extensions of time to file his objection (ECF Nos. 161, 165), extending the deadline from December 3, 2019, up to January 13, 2020. Thus, instead of the usual fourteen days allowed to respond to a magistrate judge's recommendation, Plaintiff had four times that many. During that time, he filed two motions to vacate the magistrate judge's recommendation. (ECF Nos. 162, 163.) Plaintiff offers no explanation as to why those arguments could not have been raised in his objection. On January 13, 2020, Plaintiff filed a third motion for an extension as well as his objection. In light of the latter filing, the Court denied as moot the third motion for an extension. The Court further finds that Plaintiff failed to establish good cause for yet another extension, notwithstanding his contention that the objection he filed was "incompletely drafted." (ECF No. 166 at 3.)

IV. **MOTIONS TO VACATE**

In his first motion to vacate (ECF No. 162), Plaintiff contends that the recommendation should be vacated because the magistrate judge failed to consider Exhibit 6. The exhibit is entitled, "Remarks on MH Reports Created by CDOC During 2013-14." (ECF No. 139-1.) Although the magistrate judge indicated that he was unable to find the exhibit, Plaintiff makes no showing or argument as to how anything in the exhibit would have changed the magistrate judge's recommendation. The document appears to contain Plaintiff's notes about various documents in the record. Having reviewed the exhibit, the Court finds that the "remarks" therein provide no basis for vacating the magistrate judge's recommendation.

In his second motion to vacate (ECF No. 163), Plaintiff contends that the magistrate judge erroneously relied on Plaintiff's failure to rebut a medical report stating that he had thrown food trays at prison officials. As discussed above, the fact that Plaintiff denies that this occurred does not raise a genuine issue of material fact on the current record.

V. CONCLUSION

Accordingly, the Court OVERRULES Plaintiff's objection (ECF No. 167), ACCEPTS and ADOPTS the recommendation (ECF No. 159), and GRANTS Defendant's motion for summary judgment (ECF No. 120). The Court DENIES Plaintiff's motions to vacate (ECF Nos. 162, 163) and directs the Clerk to CLOSE this case.

DATED this 24th day of February, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge